UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

United States Courts
Southern District of Texas
F I L E D
APR 22 2022
Nathan Ochsner, Clerk of Court

STEPHEN T. MITCHELL

Plaintiff,

-AGAINST-

AIMBRIDGE HOSPITALITY, LLC,
MUESCHKE HOSPITALITY, LTD,
doing business as TRU BY HILTON HOTEL,
and
UNKNOWN EMPLOYEES OF
AIMBRIDGE HOSPITALITY and/or
MUESCHKE HOSPITALITY, LTD,
doing business as TRU BY HILTON HOTEL

Defendants.

**AMENDED
COMPLAINT
AND
JURY DEMAND**

Docket: 4: 22-civ-01242

## NATURE OF THIS ACTION

This is an action brought by the plaintiff for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to the plaintiff pursuant to 42 U.S.C. §1981, 42 U.S.C. §2000(a), and for claims of slander per se, libel per se, and breach of contract.

## JURISDICTION

Jurisdiction over this action is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1343(a)(4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under the Declaratory Judgment Statute, 22 U.S.C. §2201, and pursuant to 42 U.S.C. §1981 and 42 U.S.C. §2000(a). The Court's pendent jurisdiction of claims arising under state law are invoked.

Federal diversity jurisdiction exists pursuant to 28 U.S.C. §1332 for claims of slander per se, libel per se, and breach of contract. The plaintiff is a New York State resident and the defendants either are resident corporations of the State of Texas or

1

individuals, upon information and belief, who are residents of the State of Texas. Plaintiff seeks damages in excess of one hundred thousand dollars ($100,000.00).

This court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## VENUE

Venue is appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 (b) and (c) because the defendants have sufficient contacts to be subject to personal jurisdiction in the district and the claims emerge from violations of 42 U.S.C. §1981 and 42 U.S.C. §2000(a) within the Southern District of Texas.

## PLAINTIFF

1. The plaintiff is Stephen T. Mitchell.

2. Mr. Mitchell is a person of African-American descent who resides in the State of New York.

## DEFENDANTS

3. The defendants are Aimbridge Hospitality LLC, Mueschke Hospitality LTD doing business as Tru by Hilton Hotel, and unknown employees or agents of Aimbridge Hospitality and/or Mueschke Hospitality LTD doing business as Tru by Hilton Hotel.

4. The corporations are residents of the State of Texas who own, manage, and maintain places that provide hotel accommodations and services.

5. On information and belief the unknown employees and/or agents of Aimbridge Hospitality and/or Mueschke Hospitality doing business as Tru by Hilton Hotel are residents of the State of Texas.

## FACTUAL ALLEGATIONS

6. On April 20, 2021 and April 21, 2021 the plaintiff was a patron at a hotel managed by Aimbridge Hospitality, the Tru by Hilton Hotel in Cypress, Texas.

7. The plaintiff lives in New York City. He visited Houston, Texas between April 20, 2021 and April 23, 2021.

8. Shortly after his arrival in Houston he checked into the Tru by Hilton Hotel in Cypress, Texas. The hotel is located at 27204 US Highway 290, Cypress, Texas.

9. The plaintiff registered as a guest of the Tru by Hilton Hotel on April 20, 2021.

10. The day after the plaintiff checked in, April 21, 2021, plaintiff left the hotel in the morning. Plaintiff returned to the hotel near 2 pm.

11. Shortly after entering the hotel lobby during the early afternoon of April 21, 2021 plaintiff felt an urgent need to urinate. Plaintiff was 64 years old at the time and suffered from high blood pressure and a pre-diabetic condition.

12. Plaintiff entered the lobby, purchased water, and scurried quickly to the elevator to go to his hotel room because of his urgent need to urinate.

13. Unfortunately, once the plaintiff arrived in front of the door of his hotel room he realized that he did not have the key.

14. Plaintiff was struggling and certain that he would soil himself. He turned to look for a bathroom on the floor.

15. Instead, plaintiff saw other opened empty hotel rooms and a maid working on the floor who was cleaning the rooms.

16. Plaintiff hurriedly approached the maid and asked her if he could use the bathroom for the empty room she was cleaning. She was near the entrance to the room when he asked her.

17. She said yes and allowed plaintiff to use the bathroom inside of an empty room she appeared to be cleaning.

18. Plaintiff closed the door to the bathroom, urinated, and then walked down to the elevator.

19. Plaintiff took the elevator to the lobby and asked the front desk for a new key; plaintiff explained he did not have the key they gave him originally and was locked out of his room.

20. The employee at the front desk gave the plaintiff a new key after disabling the old key. Plaintiff then returned to his room and relaxed in the bed for approximately an hour.

21. Approximately an hour after the plaintiff obtained the new key for the room he answered a sharp knock at his hotel room door. He opened the door and there were three Harris County constable police officers in uniform standing at the door.

22. Plaintiff was terrified. He knew he had done nothing to occasion a visit from the police and did not know what they wanted. The plaintiff was aware of the history of violent police encounters with Black people and was afraid such an encounter would result in this instance.

23. Two of the officers appeared very hostile. It was clear by their faces and deportment they were very hostile. The George Floyd trial was at the top of the news on April 21, 2021 and plaintiff was afraid a similar incident would befall him for no reason.

24. The police spoke to the plaintiff and told him the reason why they were at his hotel room. Once they gave the reason the plaintiff's fears increased exponentially.

25. A maid and hotel management and supervision falsely accused the plaintiff of a crime.

26. A maid and other hotel management and supervision falsely accused the plaintiff of exposing his private parts to a maid within an hour or so of the police arrival. The accusation related to the time plaintiff sought to use the bathroom in another room down the hall from the room he occupied.

27. Plaintiff was stunned by the false accusation and that the hotel management and supervision elected to involve the state police with the false accusation.

28. The police detained the plaintiff and asked him questions about his use of the bathroom down the hall and his encounter with the maid.

29. Plaintiff told them he did not expose himself to her and closed the door before using the bathroom to urinate.

30. The police told plaintiff that he was not free to leave while they investigated the matter. The police also told the plaintiff that it was likely he would be arrested for the crime of indecent exposure.

31. Once the police told plaintiff of his impending arrest the plaintiff insisted the police examine the videos of the hotel cameras. Plaintiff specifically stated to the police that he believed the accusation made and the call for police intervention were racially motivated.

32. Plaintiff was a mature (64 years of age) guest of the hotel who had an urgent need to use a bathroom. Plaintiff, once realizing that he was locked out of his hotel room, sought the use of another bathroom.

33. Plaintiff could not imagine that a white male guest of his age would have been treated the way he was being treated and plaintiff told the police such. Later, plaintiff heard racial slurs referring to him used by persons who were hotel supervisors or management; the use of the racial slurs directed at the plaintiff confirmed his belief that his mistreatment by hotel employees and/or agents was racially motivated.

34. Plaintiff insisted the constable police examine the hotel videos and he also insisted that the responding officers on the scene call a police supervisor to hear his side of the story.

35. Plaintiff also told the constables that he wanted to have whomever made the false claim of indecent exposure or called the police based upon a false indecent exposure claim to be arrested for filing a false police report in violation of Texas law.

36. The constables instructed plaintiff to stay in his hotel room while they waited for a supervisor and examined the videos. Plaintiff could not leave the hotel while the police examined the video and waited for the police supervisor, Lieutenant Rogers.

37. The constables made a radio call for Lieutenant Rogers to arrive at the scene to speak with the plaintiff. Lieutenant Rogers arrived about forty-five minutes after plaintiff's initial encounter with the constables. He spoke with plaintiff and plaintiff reiterated the complaint he made earlier; that the claim of indecent exposure was false and that he would not have been mistreated in the way he was if he were not Black.

5

38. Plaintiff insisted that Lieutenant Rogers direct the arrest of whomever made the claim of indecent exposure or called the police based upon that false claim to be arrested for filing a false police report in violation of Texas law. Lieutenant Rogers refused.

39. Plaintiff then asked Lieutenant Rogers to call the Harris County District Attorney's Office. Plaintiff wanted an Assistant District Attorney to direct the arrest of whomever made the claim of indecent exposure or called the police based upon that false claim to be arrested for filing a false police report in violation of Texas law. Lieutenant Rogers refused.

40. Plaintiff called the Harris County District Attorney's Office himself to report the crime of filing a false police report and spoke to a representative of the office.

41. Eventually Lieutenant Rogers and the constables began to act as agents of the hotel. The police reviewed the hotel videos and determined that there was no basis for an arrest of the plaintiff.

42. The constables and Lieutenant Rogers informed hotel management they would not arrest plaintiff because there was no evidence to support an arrest.

43. Plaintiff was detained within his room more than ninety minutes, at the least, while the police investigated the false charges.

44. Notwithstanding the police assertion that there was no evidence to support an arrest the hotel managers insisted that plaintiff summarily be expelled from the hotel without reason.

45. Plaintiff was expelled from the hotel after informing the hotel manager on site he strongly believed that he was being removed from the hotel for unjustifiable reasons because he was Black and complaining of racially inspired mistreatment.

46. Once the management determined to expel plaintiff for no justifiable reason from the hotel the police officers, at the insistence of hotel management, informed plaintiff that he had to leave the hotel premises immediately or risk arrest for trespass.

47. The police officers heard plaintiff complain of racial discrimination to the management at the time he was directed to leave the hotel. Notwithstanding the Lieutenant and constables instructed plaintiff to pack his things quickly because he was to be summarily evicted from the hotel.

48. This development was particularly terrifying because plaintiff was thousands of miles away from home and had pre-paid for the accommodations. Plaintiff had done nothing wrong. Plaintiff was not sure where he could go and the Tru by Hilton Hotel was on the outskirts of Houston not downtown. Plaintiff was both scared and humiliated.

49. Plaintiff was evicted from the hotel with the constables and Lieutenant Rogers acting as agents of the hotel to escort him out of the building.

50. Lieutenant Rogers insisted upon harassing plaintiff once plaintiff was outside of the hotel building because he wanted plaintiff to vacate space in the hotel parking lot while plaintiff was trying to determine where to go. Lieutenant Rogers did not allow plaintiff to wait for a cab or a ride from a friend.

51. Lieutenant Rogers conduct after plaintiff vacated the hotel building frightened and humiliated the plaintiff.

52. As a result of the defendants' unlawful actions and retaliation described above the plaintiff has suffered, continues to suffer, and will in the future suffer irreparable loss and injury, included but not limited to, humiliation, embarrassment, emotional distress, racial stigmatization, an increased sense of vulnerability, and the realization of unlawful deprivation of his federally protected rights to exercise and enjoy equal treatment in the making and enforcement of contracts in places of public accommodation and having full access to and enjoyment of places of public accommodation without regard for race and/or color.

53. On information and belief this was not an isolated incident. There are reports of a history of similar incidents involving African-American guests and invitees at hotels managed by Aimbridge Hospitality and Hilton franchise hotels throughout the United States through the time of the plaintiff's visit.

54. Further, there are multiple reports of racially discriminatory employment practices by management and supervisory employees of Aimbridge Hospitality indicating that unlawful racial discrimination is tolerated, and may be a practice, within the management ranks of the company. Such attitudes may filter into customer service.

55. There have been reports that agents and employees of the defendants use security guards and local police to challenge and remove African-American guests.

56. Similarly situated white guests and invitees were not treated in this fashion.

## COUNT I
## UNLAWFUL RACIAL DISCRIMINATION IN VIOLATION OF
## 42 U.S.C. §1981

57. Plaintiff re-alleges and incorporates the above paragraphs, as if fully set forth herein.

58. By discriminating against the plaintiff on the basis of his race, the defendants and/or their employees or agents denied the plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contract as is, and was, enjoyed by white citizens, in violation of plaintiff's rights under the Civil Rights Act of 1866, 42 U.S.C. §1981.

59. The defendants and their employees and/or agents falsely accused the plaintiff of a crime of indecency and then made use of the false accusation to initiate a process to involuntarily and unjustifiably remove the plaintiff from his hotel room.

60. These extraordinary acts by the defendants and/or their employees or agents were forms of racially discriminatory animus directed at the plaintiff to deny him the same right to enjoy the benefits, privileges, terms, and conditions of contract as is, and was, enjoyed by white citizens, in violation of plaintiff's rights under the Civil Rights Act of 1866, 42 U.S.C. §1981.

## COUNT II
## UNLAWFUL RACIAL DISCRIMINATION IN RRETAILATION FOR LODGING COMPLAINTS OF RACIAL DISCRIMINATION VIOLATION OF
## 42 U.S.C. §1981

61. Plaintiff re-alleges and incorporates the above paragraphs, as if fully set forth herein.

62. By retaliating against the plaintiff on the basis of his complaints of racial discrimination with respect to false criminal accusations being made against the plaintiff and his mistreatment at the hotel, the defendants and/or their employees or agents denied the plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contract as is, and was, enjoyed by white citizens, in violation of plaintiff's rights under the Civil Rights Act of 1866, 42 U.S.C. §1981.

63. The plaintiff complained several times to management or supervisory officials at the hotel that the false charges and subsequent mistreatment and removal from the hotel were because he is Black.

64. Plaintiff maintains that a significant part of the aforesaid mistreatment at the hotel was a result not only of racial discrimination but retaliation because he complained of racial discrimination.

65. The defendants and their employees and/or agents retaliated against the plaintiff by falsely maintaining the accusation the plaintiff engaged in a crime of indecency and then made use of the false accusation to use the police to harass the plaintiff and involuntarily and unjustifiably remove the plaintiff from his hotel room.

66. These retaliatory acts by the defendants and/or their employees or agents were forms of racially discriminatory animus directed at the plaintiff to deny him the same right to enjoy the benefits, privileges, terms, and conditions of contract as is, and was, enjoyed by white citizens, in violation of plaintiff's rights under the Civil Rights Act of 1866, 42 U.S.C. §1981.

## COUNT III
## UNLAWFUL RACIAL DISCRIMINATION IN VIOLATION OF
## 42 U.S.C. §2000(a)

67. Plaintiff re-alleges and incorporates the above paragraphs, as if fully set forth herein.

68. The defendants and or their employees or agents, by denying the plaintiff the full and equal enjoyment of the services of a place of public accommodation on the basis of race, have violated 42 U.S.C. §2000(a).

69. The defendants and their employees and/or agents falsely accused the plaintiff of a crime of indecency and then made use of the false accusation to initiate a process to involuntarily and unjustifiably remove the plaintiff from his hotel room.

70. These extraordinary acts by the defendants and/or their employees or agents were forms of racially discriminatory animus directed at the plaintiff to deny the plaintiff the full and equal enjoyment of the services of a place of public accommodation on the basis of race in violation of 42 U.S.C. §2000(a).

## COUNT IV
## UNLAWFUL RACIAL DISCRIMINATION IN RRETAILATION FOR LODGING COMPLAINTS OF RACIAL DISCRIMINATION VIOLATION OF
## 42 U.S.C. §2000(a)

71. Plaintiff re-alleges and incorporates the above paragraphs, as if fully set forth herein.

72. By retaliating against the plaintiff on the basis of his complaints of racial discrimination with respect to false criminal accusations being made against the plaintiff and his mistreatment at the hotel, the defendants and/or their employees or agents denied the plaintiff the full and equal enjoyment of the services of a place of public accommodation on the basis of race in violation of 42 U.S.C. §2000(a).

73. The plaintiff complained several times to management or supervisory officials at the hotel that the false charges and subsequent mistreatment and removal from the hotel were because he is Black.

74. Plaintiff maintains that a significant part of the aforesaid mistreatment at the hotel was a result not only of racial discrimination but retaliation because he complained of racial discrimination.

75. The defendants and their employees and/or agents retaliated against the plaintiff by falsely maintaining the accusation the plaintiff engaged in a crime of indecency and then made use of the false accusation to use the police to harass the plaintiff and involuntarily and unjustifiably remove the plaintiff from his hotel room.

76. The aforesaid acts also were retaliatory acts by the defendants and/or their employees or agents directed at the plaintiff because he complained of racial discrimination and they were enacted to deny plaintiff the full and equal enjoyment of the services of a place of public accommodation on the basis of race in violation of 42 U.S.C. §2000(a).

## COUNT V
## SLANDER PER SE

77. Plaintiff re-alleges and incorporates the above paragraphs, as if fully set forth herein.

78. The defendants and/or their agents or employees slandered the plaintiff during the course of their employment by falsely accusing the plaintiff of the crime of indecent exposure to the state police and others.

79. The defendants and/or their employees or agents misconduct constitutes the tort of slander per se and is in violation of Texas State law.

## COUNT VI
## LIBEL PER SE

80. Plaintiff re-alleges and incorporates the above paragraphs, as if fully set forth herein.

81. On information and belief the defendants and/ or their agents or employees libeled the plaintiff during the course of their employment by falsely writing or caused to be written false accusations accusing the plaintiff of the crime of indecent exposure to the state police and others.

82. The defendants and/or their agents or employees misconduct constitutes the tort of libel per se and is in violation of Texas State law.

## COUNT VII
## BREACH OF CONTRACT

83. Plaintiff re-alleges and incorporates the above paragraphs, as if fully set forth herein.

84. Plaintiff entered into a contract for a room at the defendants' hotel for at least four days. He pre-paid for the use of the room.

85. The defendants' hotel breached the contact by involuntarily causing the removal of the plaintiff from the hotel room prematurely and without lawful or legitimate cause or reason.

86. The defendants and/or their agents or employees caused the removal the plaintiff because of the unlawful and racially discriminatory and retaliatory reasons discussed above and caused the harm to the plaintiff in the manners discussed above.

87. The defendants and/or their agents or employees misconduct constitutes a breach of contract that is in violation of Texas State law.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) plaintiff demands a jury trial for all issues triable as a matter of right.

## RELIEF REQUESTED

WHEREFORE, plaintiff respectfully requests that this Court grant the following relief:

1. Enter a declaratory judgment finding that the foregoing actions of the defendants and/or their agents and employees violate the Civil Rights Act of 1866, 42 U.S.C. §1981; 42 U.S.C. §2000(a); and Texas State Law pertaining to Libel per Se, Slander Per Se, and Breach of Contract.

2. Enter injunctive relief requiring the defendants to retract the defamatory accusations that are the subject of this complaint.

3. Award compensatory damages to the plaintiff in an amount to be determined by a jury that would fully compensate plaintiff for humiliation, embarrassment, emotional distress, racial stigmatization, an increased sense of vulnerability, and the realization of unlawful deprivation of his

federally protected rights to exercise and enjoy equal treatment in the making and enforcement of contracts in places of public accommodation and having full access to and enjoyment of places of public accommodation without regard for race and/or color caused by the defendants and/or their agents and employees racially discriminatory, racially retaliatory, and tortious misconduct as set forth in this complaint.

4. Award punitive damages to the plaintiff in an amount to be determined by the jury that would punish the defendant for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar misconduct in the future.

5. Order such other and further relief that this Court sees as just and proper.

## VERIFICATION

I affirm under the penalties of perjury pursuant to 28 U.S.C. §1746 that the aforesaid statements are true and correct to the best of my ability.

Dated: April 17, 2022

Stephen T. Mitchell

By: _____

Stephen T. Mitchell, Esq.

New York, NY 10025

STM7615@aol.com